**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| A.C., an individual; | |
| Plaintiff | CIVIL ACTION NO : |
| -against- | Related Case Nos.: |
| RED ROOF INNS, INC.; WYNDHAM HOTELS & RESORTS, INC.; AND CHOICE HOTELS INTERNATIONAL, INC.; | **FIRST AMENDED COMPLAINT** |
| Defendants. | **JURY DEMAND** |

## COMPLAINT

COMES NOW the Plaintiff A.C., by and through the undersigned counsel, and respectfully submits her complaint for damages and makes the following averments.

## INTRODUCTION

1.  For years, sex trafficking ventures have brazenly operated in and out of hotels throughout this country. Criminals parade their misconduct openly on hotel properties throughout the United States while the hotels and hospitality industry remain willfully blind to the criminal misconduct to continue earning a profit at the expense of human life, human rights, and human dignity.

2.  Red Roof Inns, Inc. (hereinafter "RRI"), Wyndham Hotels & Resorts, INC. (hereinafter "Wyndham") and Choice Hotels International, Inc. (hereinafter "Choice Hotels") know and have known for more than a decade that sex trafficking repeatedly occurs under their flag throughout the country. Rather than taking timely and effective measures to thwart this epidemic, RRI, Wyndham, and Choice Hotels have instead chosen to ignore the open and obvious presence of sex trafficking on their properties, enjoying the profit from rooms rented for this explicit and apparent purpose.

3.  This action for damages is brought by the Plaintiff, a survivor of sex trafficking hereinafter identified by her initials A.C., under the federal William Wilberforce Trafficking Victims Protection

Reauthorization Act of 2008 (hereinafter "TVPRA").

4.    A.C. was first trafficked for commercial sex at the age of 19 years old.  She had run away from her family home after being sexually molested by her father and her first trafficker found her on the streets of downtown Cincinnati.  He offered her pizza and a job as a secretary and she was lured in by her need and naiveté.  Her trafficker drove her to an apartment complex and suddenly she was alone in a room with a stranger and being told to have sex with him for $40.  Eventually, this trafficker became violent, and A.C. ran away only to be preyed upon by other traffickers who also bought, sold, and required her to sexually service paying strangers as she endured brutal physical assaults, psychological torment, verbal abuse, and false imprisonment at the Defendants' hotels for over a year as the Defendants did nothing but profit.

5.    The Plaintiff now brings this action for damages against the Defendants listed herein.  Each of the Defendants, in violation of 18 U.S.C. § 1595, knowingly benefited from facilitating a venture that they knew, or at the very least should have known, to be engaging in sex trafficking in violation of 18 U.S.C. § 1591(a).

6.    A.C. was advertised on www.backpage.com against her will, physically tortured, and then sexually exploited under such duress at hotels in Sharonville and Cincinnati, Ohio including the Red Roof Inn®, Days Inn®, and Quality Inn®.

7.    As a direct and proximate result of RRI and Choice Hotels' consistent refusals to prevent human trafficking on their hotel properties, A.C. was sex trafficked, sexually exploited, and victimized repeatedly at RRI, Wyndham, and Choice brand hotels.

8.    The Plaintiff brings this action pursuant to the Trafficking Victims Protection Reauthorization Act 18 U.S.C. §1595, against the Defendants who enabled, harbored, held, facilitated, and financially benefited from a sex trafficking venture in which A.C. was trafficked for the purpose of commercial sex, sexually exploited, and brutally victimized in violation of 18 U.S.C. §1591 (a).

## **PARTIES**

9.     The Plaintiff, having moved to proceed anonymously,[1] and, herein, identified by her initials

A.C., was 19 years old when she was first sold and trafficked throughout the Cincinnati metropolitan area

for the purposes of commercial sex.  The Plaintiff is a victim of trafficking pursuant to 22 U.S.C. §7102

(15) and 18 U.S.C. §1591 (a), and a victim of a "severe form of trafficking" as it is defined under 22

U.S.C §7102 (14).   The Plaintiff currently resides in Cincinnati, Ohio.

10.     Defendant Red Roof Inns, Inc. ("RRI") is one of the largest hotel brands in the world.  It is a

Delaware corporation and can be served by its registered agent Corporation Service Company, 50 West

Broad Street, Suite 1330, Columbus, Ohio 43215.

     a.   Red Roof Inn® is an RRI brand property.

     b.   As a hotel operator, Defendant RRI controls the training and policies for its branded

        properties including the Red Roof Inn® hotel where A.C. was trafficked. Defendant RRI

        represents that it considers guest safety and security important and requires the hotels in

        its portfolio to comply with RRI brand standards and all local, state, and federal laws.[2]

     c.   Through its relationship with the staff at the Red Roof Inn® where A.C. was trafficked

        and the perpetrator who trafficked A.C. at Red Roof Inn® hotels while registered as a

        guest there, Defendant RRI knowingly benefited or received something of value from

        its facilitation of, or participation in, a venture which it knew or should have known had

        engaged in sex trafficking.

     d.   RRI receives a percentage of the gross room revenue from the money generated by the

        operations of Red Roof Inn® hotels, including a percentage of the revenue generated for

---

[1] Contemporaneously with the Complaint, Plaintiff A.C. filed a Motion for Protective Order and Leave to Proceed Anonymously with Memorandum in Support based upon the nature of the allegations in the instant Complaint, which are of an inherently intimate and personal nature. That motion is pending. Undersigned Counsel will provide her identity to counsel for the Defendants upon proper effectuation of service.
[2] *See* Red Roof Inns, Inc., Social Responsibility, https://www.redroof.com/corporate-responsibility/social-responsibility

the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

  e. RRI owns, supervises, and/or operates the Red Roof Inn® Sharonville located at 2301 E. Sharon Road, Sharonville, OH 45241.

11.   Defendant Wyndham Hotels & Resorts, Inc. ("Wyndham") is one of the largest hotel brands in the world. It is a Delaware corporation.

  a. Days Inn® is a Wyndham brand property.

  b. As a hotel operator, Defendant Wyndham controls the training and policies for its branded properties including the Days Inn® hotel where A.C. was trafficked.

  c. Defendant Wyndham maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Wyndham brand standards and all local, state, and federal laws.[3]

  d. Through its relationship with the staff at the Days Inn® hotel where A.C. was trafficked and the perpetrator who trafficked A.C. at the Days Inn® while registered as a guest there, Defendant Wyndham knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

  e. Wyndham receives a percentage of the gross room revenue from the money generated by the operations of Days Inn® hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

12.   Wyndham owns, supervises, and/or operates the Days Inn® Sharonville located at 11775 Lebanon Road, Sharonville, OH 45241.

13.   Defendant Choice Hotels International, Inc. ("Choice Hotels") is one of the largest hotel brands in the world. It is a Delaware corporation and can be served by its registered agent United States Corporation Company, 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

---

[3] Wyndham Hotels, *2019 Social Responsibility Report*, at p.30, available at https://corporate.wyndhamhotels.com/wp-content/uploads/2019/07/Wyndham-GRI-2019-Final_web.pdf

    a.   Quality Inn® is a Choice Hotels brand property.

    b.   As a hotel operator, Defendant Choice Hotels controls the training and policies for its branded properties including the Quality Inn® hotels where A.C. was trafficked.

    c.   Defendant Choice Hotels maintains that it considers guest safety and security to be important and requires the hotels in its portfolio to comply with Choice brand standards and all local, state, and federal laws. [4]

    d.   Through its relationship with the staff at the Quality Inn® hotels where A.C. was trafficked and the perpetrator who trafficked A.C. at the Quality Inn® hotels while registered as a guest there, Defendant Choice Hotels knowingly benefited or received something of value from its facilitation of, or participation in, a venture which it knew or should have known had engaged in sex trafficking.

    e.   Choice Hotels receives a percentage of the gross room revenue from the money generated by the operations of Quality Inn® hotels, including a percentage of the revenue generated for the rate charged on the hotel guest rooms in which the Plaintiff was sex trafficked.

14.   Choice Hotels owns, supervises, and/or operates the Quality Inn® and Suites Cincinnati Downtown located at 800 Eight Street W, Cincinnati, OH 45203, and owned, supervised, and/or operated the Quality Inn® Hotel and Suites Central located at 4747 Montgomery Road, Cincinnati, OH 45212.

15.   Whenever reference is made in this Complaint to any act, deed or conduct of the Defendants, the allegation is that the Defendants engaged in the act, deed, or conduct by or through one or more of their officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of the ordinary business and affairs of the Defendants.

**<u>JURISDICTION AND VENUE</u>**

---

[4] Choice Hotels International Inc., Human Rights Policy, https://www.choicehotels.com/about/diversity/human-rights

16. This Honorable Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 because this action arises under the Constitution, laws, or treaties of the United States (with an amount in controversy that exceeds $75,000.)

17. Venue is proper in this district pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to the claims asserted in this action, including the Defendants' misconduct and omissions, occurred in the judicial district where this action is brought.

## SEX TRAFFICKING UNDER FEDERAL LAW

18. Sex trafficking is defined by the TVPRA under 22 U.S.C. § 7102, as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purposes of a commercial sex act and in which the commercial sex act is induced by force, fraud, or coercion." This definition combines the three elements of sex trafficking as a criminal offense: the act, the means, and the purpose.

19. To best understand the mechanism by which sex trafficking ventures are prohibited by federal criminal law, it's best to address these elements in the reverse. Sex trafficking is slavery for the *purpose* of commercial sex, a lens on the already existing crimes prohibited by 18 U.S.C. § 1589 and §1590. The crime of slavery can then be divided into the two (2) elements remaining: the act and the means. The *act* is the "harboring, transporting, providing, or obtaining," of forced labor, codified as a violation of 18 U.S.C. §1590, while the *means* is labor "obtained or provided by force, fraud or coercion" and is codified as a violation of 18 U.S.C. §1589.

20. Thus, while the complete definition of 'sex trafficking' is found in the TVPRA under 22 U.S.C. § 7102, and it is specifically prohibited under 18 U.S.C. §1591, it is nevertheless a long-recognized and familiar atrocity.

21. Pursuant to 18 U.S.C. §1591(a), all who knowingly provide *or* obtain commercial sex that was provided or obtained through force, fraud, and coercion are guilty of sex trafficking. This includes, at a minimum, ***both*** the 'traffickers' who recruit, harbor, transport, and provide individuals for forced

commercial sex work **and** the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.[5]

## FACTUAL ALLEGATIONS

### A. THE HOSPITALITY INDUSTRY'S PARTICIPATION IN THE SEX TRAFFICKING INDUSTRY

*"75% of survivors responding to Polaris's survey reported coming into contact with hotels at some point during their exploitation…Unfortunately, 94% also disclosed that they never received any assistance, concern, or identification from hotel staff."*

*-The Polaris Project [6]*

22.   Human trafficking is the world's fastest growing crime.[7]  While the term 'human trafficking' incorporates all forced labor, the sex trafficking industry alone pulls in an estimated $99 billion each year making it the second largest illicit crime industry behind only the sale of **all** illegal drugs.[8]

23.   Sex traffickers, or 'pimps', use threats, violence, manipulation, lies, debt bondage, and other forms of coercion to compel adults and children to engage in commercial sex acts against their will.

24.   The hospitality industry plays a crucial role in the sex trade.[9]   The trope of the "no-tell motel" is certainly not a new one.  Hotels have long profited from their reputations as havens of privacy and discretion for the offending.  Hotels offer anonymity and non-traceability, making them ideal venues for crime and sex trafficking in particular.

25.   According to National Human Trafficking Hotline statistics, hotels are the top-reported venue, even over commercial front brothels, where sex trafficking acts occur.[10]   Traffickers and buyers alike

---

[5] While the 'pimps' or 'providers' are often referred to as the 'traffickers' and the purchasers are referenced as the 'Johns', 'tricks', or 'buyers' [and such nomenclature is used herein], under federal law **both** categories are 'traffickers'.
[6] *Recommendations for Hotels and Motels*, THE POLARIS PROJECT, https://polarisproject.org/hotels-motels-recommendations (last visited June 19, 2019).
[7] *Human Trafficking is the World's Fastest Growing Crime*, THE ADVISORY BOARD (May 22, 2017, 9:30 AM), https://www.advisory.com/daily-briefing/2017/05/22/human-trafficking.
[8] *Profits and Poverty: The Economics of Forced Labor*, INTERNATIONAL LABOR ORGANIZATION (May 24, 2014), http://www.ilo.org/global/publications/ilo-bookstore/order-online/books/WCMS_243391/lang--en/index.htm.
[9] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[10] *National Human Trafficking Hotline Statistics*, THE POLARIS PROJECT (2016), https://polarisproject.org/resources/2016-hotline statistics.

frequently use hotel rooms to exploit victims.

26.   Traffickers use hotels as the hub of their operations. Inside, the victims are harbored, raped, assaulted, and forced to service buyers who come to the hotel solely to purchase sex.  This is referred to as an 'in call'.

27.   Hotels are also the venue of choice for buyers seeking an 'out call,' wherein the buyer rents a hotel room and the trafficker delivers the victim to the buyer's room to complete the sordid transaction. Unsurprisingly, those on the demand side of this transaction (i.e. those purchasing sex) typically choose to engage in trafficking away from their home, naturally leading to the increased involvement of hotels.  In New York City alone, 45% of all reported sexual exploitation took place in hotels, including the Ritz Carlton and the Plaza.[11]

28.   The problem is industry wide.  In the United States, as much as 63% of all trafficking incidents happen in hotels ranging from luxury to economy.[12]

29.   Due to the overall complacency of the hospitality industry on addressing the issue, hotels are *the* venue of choice for sex trafficking.[13]  Traffickers and buyers capitalize on the hotel industry's general refusal to adopt and enforce companywide anti-trafficking policies from the corporate to the property level, train staff on what to look for and how to respond, and/or establish safe and secure reporting mechanisms for those at the point of sale.

30.   Every day, thousands of hotel employees witness manifestations of sex trafficking and commercial exploitation.  Thus, the hospitality industry has the greatest reach to prevent, identify and thwart sexual exploitation where it is most likely to occur.

31.   But aside from their unique position in this epidemic, hotels and motels have the highest obligation to protect their guests from known dangers, including sex trafficking and sexual

---

[11] Giovanna L. C. Cavagnaro, *Sex Trafficking: The hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[12] Michele Sarkisian, *Adopting the Code: Human Trafficking and the Hospitality Industry*, CORNELL HOSPITALITY REPORT, 15(15), 3-10 (2015).
[13] *Hotels Initiative*, THE POLARIS PROJECT, https://polarisproject.org/initiatives/hotels (last visited June 19, 2019).

exploitation, and should be held accountable when they fail to comply. As aptly stated in a publication by the Cornell University School of Hospitality, "the hospitality industry is undoubtedly involved in the sex trafficking industry…and therefore has an inherent responsibility to deter the crime and can be liable for failing to do so."[14]

32.  Training hotel staff to identify the signs of sex trafficking and sexual exploitation is a critical and obvious legal obligation for the hospitality industry. The presence of sex trafficking and sexual exploitation in a hotel is frequently an obvious occurrence and, although unutilized, underutilized, or ineffectively utilized, numerous well-researched trainings and toolkits have been published to the hotel industry over the last decade to help hotel staff in every position to identify the signs.[15]

33.  From check-in to check-out there are a number of indicators that traffickers and their victims exhibit during their stay at a hotel. With proper training and the implementation of reasonable security measures, hospitality companies could prevent regular sex trafficking under their flag.

34.  Obvious signs of sex trafficking at a hotel may include: an excess of condoms in rooms, individuals carrying or flashing large amounts of cash, excessive amounts of cash stored in the room, renting two (2) rooms next door to each other, declining room service for several consecutive days, significant foot traffic in and out of room(s), men traveling with multiple women who appear unrelated, women known to be staying in rooms without leaving, women displaying physical injuries or signs of fear and anxiety, guests checking in with little or no luggage, hotel guests who prevent another individual from speaking for themselves, or a guest controlling another's identification documents.[16]

35.  Obviously, hotel staff who have undergone training are more aware of sex trafficking when it happens and are more willing to report it than hotel staff who have not been trained.[17] Thus, hospitality

---

[14] Giavanna L. C. Cavagnaro, *Sex trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.
[15] DEPARTMENT OF HOMELAND SECURITY, *Blue Campaign Toolkit*, attached as "Exhibit A." Available at: https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf.
[16] Id. See also, Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, THE INSTITUTE TO ADDRESS CRIMINAL SEXUAL EXPLOITATION, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.
[17] Giavanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY, SCHOOL OF HOTEL ADMINISTRATION (2017), http://scholarship.sha.cornell.edu/honorstheses/3.

companies are obligated to adopt policies and procedures related to sex trafficking and to enforce these policies and procedures as brand standard through to the property level.

36.     Hospitality companies can and should mandate that *all* staff working at *all* hotel properties across their brand complete sex trafficking training.[18]

37.     The hospitality industry has been cognizant of their role and responsibilities in the sex trafficking industry for years.

38.     In 2011, Wyndham Hotels trained only some of its employees to look for signs of trafficking.[19]

39.     In 2012, an anti-trafficking coalition alerted Defendants Choice Hotels of the likelihood of sex trafficking during the London Olympics, and inquired about the companies anti-trafficking policies, while urging immediate action regarding trafficking.[20]

40.     Choice Hotels claims it has supported the anti-trafficking group Polaris since 2010 and in a partnership with EPCAT ((End Child Prostitution, Pornography and Trafficking of Children for Sexual Purposes)) developed a training module in 2010 for hotel management and staff.[21]

41.     Further, nationwide campaigns recognized the issue of human trafficking in the hotel industry and the lack of internal policies to address the issue, and took initiative as early as 1997 with the United Nations Blue Heart Campaign and domestically in 2010 with the Department of Homeland Security's Blue Campaign.[22]   These efforts sought to educate both the public and private sectors on identifying and combatting human trafficking, including the hospitality industry and both campaigns released online resources and toolkits publicly accessible to any entity concerned with human

---

[18] Shea M. Rhodes, *Sex Trafficking and the Hotel Industry: Criminal and Civil Liability for Hotels and their Employees*, The Institute to Address Criminal Sexual Exploitation, Villanova University School of Law (2015), https://cseinstitute.org/wp-content/uploads/2015/06/Hotel_Policy_Paper-1.pdf.
[19] Katie Lobosco, *Super 8 workers trained to spot sex trafficking*, CNN BUSINESS (Nov. 18, 2014), https://money.cnn.com/2014/11/18/news/companies/days-inn-sex-trafficking/.
[20] *Corporate Strategy to Address Human Trafficking: Investor Recommendations for London Olympic Sponsors and Hospitality Companies, Christian Brothers Investment Services*, CBIS, http://cbisonline.com/us/wp-content/uploads/sites/2/2012/09/FINAL_OlympicsReport_9_28.pdf (last visited June 19, 2019).
[21] *Human Rights Policy*, CHOICE HOTELS, https://www.choicehotels.com/about/responsibility/human-rights-policy (last visited June 6, 2019).
[22] *DHS Blue Campaign Five Year Milestone*, DEPARTMENT OF HOMELAND SECURITY (Jul. 22, 2015), https://www.dhs.gov/blog/2015/07/22/dhs-blue-campaign-five-year-milestone.

trafficking.[23]

42. Hospitality companies have both the power and responsibility to make sex trafficking difficult for the offenders. Yet, they either repeatedly fail to heed the call or repeatedly failed to execute their own policies. Instead, each continues to facilitate these crimes at their hotels, content to direct their efforts solely to profit and the bottom line.

## B. THE DEFENDANTS CONTROL THE HOSPITALITY INDUSTRY

43. Hotel brands or flags lend their name and likeness to third party owners, while the building and operations are run by a franchisee or a third party management company under the brands' control. In return, the parent brand exchanges the high risk that is inherent in owning an asset like a hotel for the low risk associated with owning a franchise contract and still profits from putting heads in beds.

44. The average consumer does not see this relationship. The parent brand gives the franchisee property its complete identity. It provides signage on and in front of the building that assures customers that if they check into that hotel they can expect the standards consistent with the parent hotel brand. The same brand emblazoned on everything in the hotel from the pens in the bedside tables to the staff uniforms at the front desk.

45. In addition to brand recognition, a marketing organization, hotel listings in the Global Distribution System (GDS) and other online travel agency databases, the brand provides the franchise hotel with access to its brand wide central reservation system, 800 number, revenue management tools, world-class loyalty programs and a website. Thus, booking and room reservations are controlled by the corporate parent brand.[24]

46. The franchise hotel typically pays around 10% of their total revenue back to the parent hotel brand and is required to develop and maintain the property in accordance with the parent brand's standards as they are laid out in the franchise agreement.

---

[23] *Human Trafficking and the Hospitality Industry*, DEPARTMENT OF HOMELAND SECURITY, https://www.dhs.gov/blue-campaign/hospitalityindustry (last visited June 19, 2019).
[24] Ellen Meyer, *The Origins and Growth of Franchising in the Hotel Industry*, LODGING MAGAZINE (April 10, 2018) https://lodgingmagazine.com/the-origins-and-growth-of-franchising-in-the-hotel-industry/.

47. Per the franchise agreement, the parent brand may enforce these standards through periodic inspections and even termination of the franchise agreement if the franchise hotel is found to be inadequate. The right of the parent hotel brand to enforce their brand standards is also their responsibility.

48. At the time of the incidents alleged herein:

    a. Defendant Red Roof Inns, Inc. owned and controlled the Red Roof Inn® brand.

    b. Defendant Wyndham Hotels & Resorts, INC. owned and controlled the Days Inn® brand.

    c. Defendant Choice Hotels International, Inc. owned and controlled the Quality Inn® and brand.

49. Parent hotel brands may kick delinquent hotels out of their system but it is at the expense of terminating their royalty payments.

## C. THE DEFENDANTS' WILLFUL BLINDNESS TO SEX TRAFFICKING AT THEIR HOTELS

50. Defendants Red Roof Inns, Inc., Wyndham Hotels & Resorts, Inc., and Choice Hotels International, Inc. have been on notice of repeated incidences of sex trafficking occurring at their Red Roof Inn®, Days Inn® and Quality Inn® hotels yet these brand managers failed to take the necessary action to prevent sex trafficking and still persist in failing to take the necessary action to prevent sex trafficking at their hotels.

51. RED ROOF INNS, INC. ("RRI"):

    a. Defendant RRI owns, supervises, or operates the Red Roof Inn® Sharonville located at 2301 E Sharon Road, Sharonville, OH 45241. RRI failed to implement and enforce any of its own policy or policies and protect Plaintiff A.C. from being sex trafficked.

    b. RRI knew or should have known that the Red Roof Inn® hotel where Plaintiff A.C. was trafficked was an area known for high incidence of crime and prone to sex trafficking

activity on and around the hotel premises, including when Plaintiff A.C. was trafficked.[25]

c.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant RRI has repeatedly failed to stop these actions.

d.   Defendant RRI exercised control over Red Roof Inn® hotels by:

   i.   distributing information to assist employees in identifying human trafficking;

   ii.   providing a process for escalating human trafficking concerns within the organization;

   iii.   requiring employees to attend training related to human trafficking;

   iv.   providing new hire orientation on human rights and corporate responsibility;

   v.   providing training and education to Red Roof Inn® branded hotels through webinars, seminars, conferences, and online portals;

   vi.   developing and holding ongoing training sessions on human trafficking; or

   vii.   providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

e.   RRI was in an agency relationship with Red Roof Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant RRI's exercise of an ongoing and systemic right of control over Red Roof Inn® hotels by Defendant RRI's operations, including the means and methods of how Red Roof Inn® branded hotels conducted daily business through one or more of the following actions:

---

[25] *Sharonville Crime Rates*, NEIGHBORHOOD SCOUT, https://www.neighborhoodscout.com/oh/sharonville/crime (last visited July 12, 2019). *See* Ken Brown, *FBI aided law enforcement in prostitution sting*, FOX19 (April 14, 2017), https://www.fox19.com/story/35148699/fbi-aided-local-law-enforcement-in-prostitution-sting/ (Sharonville and Springdale Police partnered with the FBI for a prostitution sting at area hotels … "Some of [these women] are being trafficked, we know some of them are being trafficked in our hotels, in our city, in our various cities," said Detective Sgt Broenner.) *See also* T.J. Parker, *Four suspects indicted in connection with a Blue Ash prostitution ring*, WCPO, (Dec. 29, 2016) ("four suspects face a total of 17 separate charges related to human trafficking [and] prostitution and possession … at a Blue Ash Red Roof Inn.") *See Review of Red Roof Inn – Sharonville,* TripAdvisor, (July 2016), https://www.tripadvisor.com/Hotel_Review-g50962-d225417-Reviews-or10-Red_Roof_Inn_Cincinnati_Sharonville-Sharonville_Ohio.html#REVIEWS ("[T]he place was raided by the police DRUGS And PROSTITUTION is what this place allows…").

      i.   hosting online bookings on Defendant RRI's domain;

     ii.   requiring Red Roof Inn® branded hotels to use Defendant RRI's customer rewards program;

   iii.   setting employee wages;

   iv.   making employment decisions;

    v.   advertising for employment;

   vi.   sharing profits;

  vii.   standardized training methods for employees;

 viii.   building and maintaining the facility in a manner specified by the owner;

   ix.   standardized or strict rules of operation;

    x.   regular inspection of the facility and operation by owner;

   xi.   fixing prices; or

  xii.   other actions that deprive Red Roof Inn® branded hotels of independence in business operations.

f.   An apparent agency also exists between Defendant RRI and Red Roof Inn® hotels. Defendant RRI held out Red Roof Inn® branded hotels to the public as possessing authority to act on its behalf.

g.   Given Defendant RRI's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Red Roof Inn® branded hotels, Defendant RRI breached its duties in the following ways:

      i.   did not adequately distribute information to assist employees in identifying human trafficking;

     ii.   failed to provide a process for escalating human trafficking concerns within the organization;

   iii.   failed to mandate all managers, employees, and owners attend training related to human trafficking;

iv.   failed to provide new hire orientation on human rights and corporate responsibility;

v.   failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

vi.   failed to develop, hold, or require ongoing training sessions on human trafficking; or

vii.   failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

h.   For years, Defendant RRI has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Red Roof Inn® branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff A.C. at Red Roof Inn® hotels that forms the basis of this complaint.

i.   In April of 2017, a man two women and four minors were trafficked out of a Red Roof Inn in St. Charles, Missouri. The women and girls were forced to post ads for sex on websites and were not given any money for their work.[26]

ii.   In August of 2016, two individuals trafficked many Asian women out of a Red Roof Inn in Princeton, New Jersey. These women were advertised by their traffickers on various websites and forced into sexual acts without receiving monetary payment. [27]

iii.   In August of 2016, the United States Government reached $175,000 settlement with former owners of Charlotte, North Carolina Red Roof Inn as penalty for sex

---

[26] Ohio Man Sentenced on Sex Trafficking Charges, THE UNITED STATES DEPARTMENT OF JUSTICE (Nov.7,2019) https://www.justice.gov/usao-edmo/pr/ohio-man-sentenced-sex-trafficking-charges
[27] Cameron Luttrell, Three People Arrested for Human Trafficking in Mercer County: Police, PATCH (Nov.7,2019) https://patch.com/new-jersey/princeton/three-people-arrested-human-trafficking-mercer-county-police

trafficking and drug crimes on hotel property.[28]

    iv.   In November of 2014, a man locked a woman in his home then brought her to a Red Roof Inn in Louisville, Kentucky where she was forced to engage in prostitution.[29]

    v.   In February of 2015, a man kidnapped woman at knifepoint in West Palm Beach and brought her to a Red Roof Inn in Tampa, Florida. There the man starved her and sold her for sex.[30]

    vi.   In November of 2016, a man wrote love letters in order to entice a fifteen year-old girl into prostitution. He placed advertisements for her on the internet and bought room at a Red Roof Inn in Windsor Locks, Connecticut where she was forced to prostitute herself.[31]

    vii.   In May of 2017, Twenty- three individuals were arrested in San Joaquin County, California in a human trafficking investigation. Police discovered eight girls, ages fourteen to seventeen, who were forced to prostitute at a Red Roof Inn.[32]

    viii.   In January of 2018, a woman rented rooms from the Red Roof Inn in Saint Charles, Missouri in order to traffic a 17 year old girl.[33]

    ix.   In December of 2016, four individuals were arrested for human trafficking at Red Roof Inn in Blue Ash, Ohio. One of the individuals lived across the street allowing him to run the trafficking ring from his residence.[34]

---

[28] Cara Field, Former Owners of Motel Used For Child Sex- Trafficking to forfeit $175K,WYFF,(Nov.7,2019) https://www.wyff4.com/article/former-owners-of-motel-used-for-child-sex-trafficking-to-forfeit-175k/7023625
[29] Nathan Vicar, Avondale Man Pleads Guilty to Sex Trafficking in Louisville, FOX 19, (Nov7,2019) https://www.fox19.com/story/27390036/avondale-man-pleads-guilty-to-sex-trafficking-in-louisville/
[30] https://www.tampabay.com/news/publicsafety/crime/deputies-lauderhill-man-arrested-on-charges-of-human-trafficking-in-tampa/2219461
[31] Deputies: Lauderhill Man Arrested on Charges of Human Trafficking in Tampa, TAMPA BAY TIMES (Nov.7,2019), http://www.courant.com/news/connecticut/hc-sex-trafficking-teenager-prison-1115-20161114-story.html
[32] Sarah Heise, 23 Arrested for Human Trafficking, Prostitution in San Joaquin County, KRCA,(Nov.8,2019), https://www.kcra.com/article/23-arrested-in-san-joaquin-county-human-trafficking/9588063
[33] Erica Tallan, *Woman Accused of Child Sex Trafficking at St. Charles Motel*, FOX 2, (Nov.8,2019) https://fox2now.com/2018/01/29/woman-accused-of-child-sex-trafficking-at-st-charles-motel/
[34] Dan Griffin, *4 Indicted in Human- Trafficking Case at Blue Ash Hotel*, WLWT (Nov.7,2019).,https://www.wlwt.com/article/4-people-indicted-in-human-trafficking-case-at-blue-ash-hotel/8547287

x. In the spring of 2014, two men were arrested for human trafficking, kidnapping, deriving support from alleged "prostitution" and rape at the Red Roof Inn in Saugus, Massachusetts.[35]

xi. In November 2014, a man was arrested and later sentenced to prison for sex trafficking a fifteen year old girl at the Red Roof Inn in Enfield, Connecticut.[36]

xii. In 2015, the Red Roof Inn located in Charlotte, North Carolina, was seized for profiting from sex trafficking that occurred on the property. The sex trafficking had been occurring for years and Red Roof Inn managers and maids were paid by pimps to not report the activities.[37]

xiii. In October of 2015, a man trafficked women whom he controlled with drugs for commercial sex at the Red Roof Inn in Plains Township, Pennsylvania as well as other hotel chains.[38]

52. WYNDHAM HOTELS & RESORTS, INC. ("Wyndham")

a. DAYS INN®

i. Defendant Wyndham owns, supervises, or operates the Days Inn® by Wyndham Sharonville located at 11775 Lebanon Road, Sharonville, OH 45241.

ii. Wyndham failed to implement and enforce any of its own policy or policies and protect Plaintiff A.C. from being sex trafficked.

iii. Wyndham knew or should have known that the Days Inn® hotel where Plaintiff A.C. was trafficked was an area known for high incidence of crime and prone to

---

[35] Julie Manganis, *Woman Says Lured With Promise of Heroin, Forced to Work as Prostitute*, SALEMN NEWS, (Nov.8,2019) https://www.salemnews.com/news/local_news/woman-says-lured-with-promise-of-heroin-forced-towork/article_018e29b6-d6e1-5b7e-b3ff-c42171fa611c.html
[36] David Owens, *Hartford Man Sentenced to Prison For Sex Trafficking of 15-Year-Old Girl* HARTFORD COURANT,(Nov.8,2019),,https://www.courant.com/news/connecticut/hc-sex-trafficking-teenager-prison-1115-20161114-story.html
[37] Charlotte Hotel at Center of Sex Trafficking Allegations, WCNC (Nov.8,2019) https://www.wcnc.com/article/news/crime/charlotte-hotel-at-center-of-sex-trafficking-allegations/213056842
[38] Joseph Kohut, Scranton *Sex Trafficking Cases Move Forward*, POCONO FORWARD (Nov.7,2019), https://www.poconorecord.com/news/20161204/scranton-sex-trafficking-cases-move-forward

sex trafficking activity on and around the hotel premises, including when Plaintiff A.C. was trafficked.[39]

    iv.   Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Wyndham has repeatedly failed to stop these actions.

    v.   Defendant Wyndham exercised control over Days Inn® hotels by:

      1.  distributing information to assist employees in identifying human trafficking;

      2.  providing a process for escalating human trafficking concerns within the organization;

      3.  requiring employees to attend training related to human trafficking;

      4.  providing new hire orientation on human rights and corporate responsibility;

      5.  providing training and education to Days Inn® branded hotels through webinars, seminars, conferences, and online portals;

      6.  developing and holding ongoing training sessions on human trafficking; or

      7.  providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

---

[39] *See Sharonville Crime Rates*, NEIGHBORHOOD SCOUT, https://www.neighborhoodscout.com/oh/sharonville/crime (last visited Oct. 30, 2019.) *See* Ken Brown, *FBI aided law enforcement in prostitution sting*, FOX19 (April 14, 2017), https://www.fox19.com/story/35148699/fbi-aided-local-law-enforcement-in-prostitution-sting/ (Sharonville and Springdale Police partnered with the FBI for a prostitution sting at area hotels … "Some of [these women] are being trafficked, we know some of them are being trafficked in our hotels, in our city, in our various cities," said Detective Sgt. Broenner.) *See* Review of Days Inn by Wyndham – Sharonville, TripAdvisor (Aug. 2019) *https://www.tripadvisor.com/Hotel_Review-g50962-d95112-Reviews-Days_Inn_by_Wyndham_Sharonville-Sharonville_Ohio.html* ("Hotel was like a brothel. Prostitute and Johns making noise in the halls at all hours of the night.")

vi. Wyndham was in an agency relationship with Days Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Wyndham's exercise of an ongoing and systemic right of control over Days Inn® hotels by Defendant Wyndham's operations, including the means and methods of how Days Inn® branded hotels conducted daily business through one or more of the following actions:

1. hosting online bookings on Defendant Wyndham's domain;

2. requiring Days Inn® branded hotels to use Defendant Wyndham's customer rewards program;

3. setting employee wages;

4. making employment decisions;

5. advertising for employment;

6. sharing profits;

7. standardized training methods for employees;

8. building and maintaining the facility in a manner specified by the owner;

9. standardized or strict rules of operation;

10. regular inspection of the facility and operation by owner;

11. fixing prices; or

12. other actions that deprive Days Inn® branded hotels of independence in business operations.

vii. An apparent agency also exists between Defendant Wyndham and Days Inn® hotels. Defendant Wyndham held out Days Inn® branded hotels to the public as possessing authority to act on its behalf.

viii. Given Defendant Wyndham's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its

branded hotels, including Days Inn® branded hotels, Defendant Wyndham breached its duties in the following ways:

1. did not adequately distribute information to assist employees in identifying human trafficking;

2. failed to provide a process for escalating human trafficking concerns within the organization;

3. failed to mandate managers, employees, or owners attend training related to human trafficking;

4. failed to provide new hire orientation on human rights and corporate responsibility;

5. failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

6. failed to develop and hold or require ongoing training sessions on human trafficking; or

7. failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

ix. For years, Defendant Wyndham has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Days Inn® branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff A.C. at Days Inn® hotels that forms the basis of this complaint.

1. In February of 2019, a man was caught running a human trafficking operation out of a Days Inn® in Madison Heights, Michigan.[40]

---

[40] Man Charged for Sex Trafficking Out of Madison Heights Days Inn,FOX2, (Nov.7,2019)
http://www.fox2detroit.com/news/local-news/man-arrested-for-sex-trafficking-out-of-madison-heights-days-inn

2. In August of 2018, four people were arrested for trafficking a 15 year-old girl out of a Marietta, Georgia Days Inn®.[41]

3. In October of 2015, a man trafficked women for commercial sex at the Days Inn® in Reading, Pennsylvania as well as other hotel chains.[42]

4. In September of 2018, a woman was arrested for trafficking two 17 year-old girls at the Days Inn® in Fayetteville, North Carolina.[43]

5. In July of 2018, a man coerced a young girl from Texas to travel to see him in Gulfport, Mississippi where he forced her into performing commercial sex at a Days Inn®.[44]

6. In December of 2018, a couple coerced females from China to move to Maine by offering tourism visas. The women and girls were stripped of their identification, advertised as prostitutes on Craigslist, and forced to sexually service men at Days Inn® locations in Kittery, Maine and Dover, New Hampshire.[45]

7. In June of 2018, three individuals were arrested for a human trafficking ring operating out of a Days Inn® in Virginia Beach, Virginia.[46]

[41] Shaddi Abusaid, Marietta sex trafficking ring thwarted, police say, MARIETTA DAILY JOURNAL, (Aug 21, 2018) https://www.mdjonline.com/news/marietta-sex-trafficking-ring-thwarted-police-say/article_997739c0-a55b-11e8-9647-338800611347.html

[42] Joseph Kohut, Scranton *Sex Trafficking Cases Move Forward*, POCONO FORWARD (Nov.7,2019), https://www.poconorecord.com/news/20161204/scranton-sex-trafficking-cases-move-forward

[43] Nancy McCleary, Fayetteville Woman Charged in Human Trafficking Operation, THE FAYETTEVILLE OBSERVER,(Nov.8,2019),https://www.fayobserver.com/news/20180921/fayetteville-woman-charged-in-human-trafficking-operation

[44] Robin Fitzgerald, *Girl Found at a Gulfport Hotel, A Man With Her is Accused of Human Trafficking*, Sheriff Says,SUNHERAD,(Nov.7,2019),https://www.sunherald.com/news/local/crime/article215055145.html

[45] Elizabeth Dinan, *Husband, Wife Charged in Sex Trafficking, Prostitution 'Scheme'* SEACOASTONLINE,(Nov.8,2019),https://www.seacoastonline.com/news/20181214/husband-wife-charged-in-sex-trafficking-prostitution-scheme

[46] Jason Marks, *Three Sex Trafficking Suspects Arrested by Virginia Beach Police*,WAVY,(Nov.8,2019),https://www.wavy.com/news/three-sex-trafficking-suspects-arrested-by-virginia-beach-police/

8. In June of 2018, a man enticed a 15 year old girl from her residential home and forced her to work as a sex servant at a Days Inn® in Tannersville, Pennsylvania.[47]

53. CHOICE HOTELS INTERNATIONAL, INC. ("CHOICE HOTELS")

    a. QUALITY INN®

        i. Defendant Choice Hotels owns, supervises, or operates the Quality Inn® and Suites Cincinnati Downtown located at 800 Eight Street W, Cincinnati, OH 45203, and owned, supervised, and/or operated the Quality Inn® Hotel and Suites Central located at 4747 Montgomery Road, Cincinnati, OH 45212.

        ii. Choice Hotels failed to implement and enforce any of its own policy or policies and protect Plaintiff A.C. from being sex trafficked.

        iii. Choice Hotels knew or should have known that the Quality Inn® hotels where Plaintiff A.C. was trafficked was an area known for high incidence of crime and prone to sex trafficking activity on and around the hotels' premises, including when Plaintiff A.C. was trafficked.[48]

        iv. Despite having knowledge of the extensive prostitution and sex trafficking that occurs at its hotels, Defendant Choice Hotels has repeatedly failed to stop these actions.

        v. Defendant Choice Hotels exercised control over Quality Inn® hotels by:

            1. distributing information to assist employees in identifying human trafficking;

---

[47] Man Found Guilty of Sex Trafficking 15-Year Old Girl, TRI-COUNTY INDEPENDENT, (Nov.7,2019) https://www.neagle.com/news/20161110/man-found-guilty-of-sex-trafficking-15-year-old-girl

[48] *See Cincinnati Crime Rates*, NEIGHBORHOOD SCOUT, https://www.neighborhoodscout.com/oh/cincinnati/crime (last visited Oct. 30, 2019). *See* Fox19 (Jun. 2, 2014) *Police close Norwood hotel for drugs, prostitution,* https://www.fox19.com/story/25670671/police-close-quality-hotel-in-norwood-cite-drugs-prostitution/. Review for Quality Inn and Suites – Cincinnati, TripAdvisor (Oct. 10, 2019) https://www.choicehotels.com/ohio/cincinnati/quality-inn-hotels/oh375?brand=QI ("Ok for the location but area around the Hotel is a little sketchy.") *See also* Review for Quality Inn and Suites – Cincinnati, TripAdvisor (Nov. 2106) ("It was a scary neighborhood.")

2. providing a process for escalating human trafficking concerns within the organization;

3. requiring employees to attend training related to human trafficking;

4. providing new hire orientation on human rights and corporate responsibility;

5. providing training and education to Quality Inn® branded hotels through webinars, seminars, conferences, and online portals;

6. developing and holding ongoing training sessions on human trafficking; or

7. providing checklists, escalation protocols and information to property management staff; or tracking performance indicators and key metrics on human trafficking prevention.

vi. Choice Hotels was in an agency relationship with Quality Inn® branded hotels offering public lodging services in the hotel. This agency relationship was created through Defendant Choice Hotel's exercise of an ongoing and systemic right of control over Quality Inn® hotels by Defendant Choice Hotel's operations, including the means and methods of how Quality Inn® branded hotels conducted daily business through one or more of the following actions:

1. hosting online bookings on Defendant Choice Hotels' domain;

2. requiring Quality Inn® branded hotels to use Defendant Choice Hotels' customer rewards program;

3. setting employee wages;

4. making employment decisions;

5. advertising for employment;

6. sharing profits;

7. standardized training methods for employees;

8. building and maintaining the facility in a manner specified by the owner;

9. standardized or strict rules of operation;

10. regular inspection of the facility and operation by owner;

11. fixing prices; or

12. other actions that deprive Quality Inn® branded hotels of independence in business operations.

vii. An apparent agency also exists between Defendant Choice Hotels and Quality Inn® hotels. Defendant Choice Hotels held out Quality Inn® branded hotels to the public as possessing authority to act on its behalf.

viii. Given Defendant Choice Hotel's public statements on behalf of its hotel brands and the control it assumed in educating, implementing, and directing its branded hotels, including Quality Inn® branded hotels, Defendant Choice Hotels breached its duties in the following ways:

1. did not adequately distribute information to assist employees in identifying human trafficking;

2. failed to provide a process for escalating human trafficking concerns within the organization;

3. failed to mandate managers, employees, or owners attend training related to human trafficking;

4. failed to provide new hire orientation on human rights and corporate responsibility;

5. failed to provide training and education on human trafficking through webinars, seminars, conferences, and online portals;

6. failed to develop and hold or require ongoing training sessions on human trafficking; or

7. failed to provide checklists, escalation protocols and information to property management staff or tracking performance indicators and key metrics on human trafficking prevention.

ix. For years, Defendant Choice Hotels has demonstrated willful blindness to the rampant culture of sex trafficking which tragically occurs on its Quality Inn® branded properties throughout the country. This same entrenched, pervasive willful blindness to sex trafficking facilitated the sex trafficking of Plaintiff A.C. at Quality Inn® hotels that forms the basis of this complaint.

1. In September of 2016, police responded to a Quality Inn® in Oak Grove, Kentucky where a young girl was being held against her will and forced to solicit sexual acts. The hotel staff had knowledge of the sex trafficking.[49]

2. In January of 2019, two women were rescued from a Quality Inn® hotel in Battle Creek, Michigan. The men who trafficked these women forced the women to prostitute themselves through the use of drugs and physical violence. [50]

3. In March of 2018, Police responded to a call at the Quality Inn® in Camarillo, California where a 51-year-old woman was found being held against her will and trafficked for commercial sex. Through a criminal investigation, authorities learned the hotel was aware of the trafficking and aided in its occurrence.[51]

[49] Oak Grove Police sergeant, 2 others arrested during prostitution inestigation, WKRN, (Sept. 28, 2016) https://clarksvillenow.com/local/oak-grove-police-sergeant-2-others-arrested-during-prostitution-investigation/
[50] Trace Christenson, *2 Lansing Men Arrested in Battle Creek on Human Trafficking Charges*, BATTLE CREEK ENQUIRER,https://www.battlecreekenquirer.com/story/news/2019/01/14/lansing-battle-creek-human-trafficking-quality-inn/2570625002/
[51] Jeremy Child, *One Arrested in Human Trafficking Attempt in Camarillo*, VC Star, https://www.vcstar.com/story/news/local/communities/camarillo/2018/04/05/one-arrested-human-trafficking-attempt-camarillo/492228002/

4. In January of 2017, a man was arrested for trafficking a woman for the purposes of commercial sex at a Quality Inn® in Dothan, Alabama.[52]

5. In January of 2017, two trafficked women were rescued during a police sting at a Quality Inn® in Stroudsburg, Pennsylvania. The women told detectives they feared for their life as they were physically abused and threatened by the man who forced them to solicit sex through backpage.com.[53]

6. In February of 2015, a 17 year-old girl was being held, drugged and used as a sex servant at a Quality Inn® in Raynham, Massachusetts.[54]

7. In May of 2017, a man targeted and recruited heroin addicts to have commercial sex with strangers to pay off their drug debts at a Quality Inn® in Jacksonville, Florida. Their services were advertised on bulletin board websites and physical abuse was used against the women as a way to keep them in the trafficker's possession.[55]

8. In April of 2018, a man was arrested for sex trafficking at a Quality Inn® in Woodbridge, Virginia.[56]

9. In July of 2013, a man and a woman recruited and harbored a 16 year-old girl for the purpose of commercial sex at a Quality Inn® in

---

[52] Lance Griffin, *Website, Hotel, Assailant All Being Sued As A Result of Dothan Sex Trafficking Case*, DOTHAN EAGLE,https://www.dothaneagle.com/news/crime_court/website-hotel-assailant-all-being-sued-as-a-result-of/article_eef1d91c-e3fd-11e6-a872-1bdefa8794b3.html
[53] Manuel Gamiz, *Two Sex Workers Rescued; Alleged Pimps and Johns Arrested in Poconos Sting*, THE MORNING CALL, http://www.mcall.com/news/breaking/mc-poconos-sex-sting-trafficking-arrests-20170117-story.html
[54] Marc Larocque, *Police Arrest Alleged Pimp in Sex Trafficking Sting in Raynham*, WICKED LOCAL(Nov.7,2019)https://raynham.wickedlocal.com/article/20150212/NEWS/150218308
[55] Garrett Pelican, Jacksonville Man, 43, *Arrested On Human Trafficking Charges, The Florida Times Union*,(NMov.7,2019) https://www.jacksonville.com/news/public-safety/2017-05-31/jacksonville-man-43-arrested-human-trafficking-charges
[56] Hooker Patrol: Human Trafficking Arrest of Alleged Pimp Maurice Cotton Charged for Running Hookers in Quality Inn, THE CHESAPEAKE SPEAK TODAY, (Nov.7,2019), https://www.thechesapeaketoday.com/2018/04/08/hooker-patrol-human-trafficking-arrest-of-alleged-pimp-maurice-cotton-charged-for-running-hookers-in-quality-inn/

Columbia, South Carolina. They lured her in with promises of food, clothing and a place to stay.[57]

10. In February of 2016, police officials arrested a man for human trafficking three adults and a minor at a Quality Inn®, in Bakersfield, California.[58]

11. In September of 2015, a trafficker was arrested, after a woman escaped from his custody. The man was found to be holding two more women captive at the Quality Inn® in North Charleston, North Carolina.[59]

12. In July of 2018, a man was arrested at a Quality Inn® in Murfreesboro, Tennessee for prostituting a 23 year-old woman he had been keeping there.[60]

13. In January of 2015, a man was arrested for the trafficking a 15 year-old out of a Quality Inn® in Miami, Florida.[61]

## D. THE SEX TRAFFICKING OF A.C.

54.     The facts alleged herein stem from several sex trafficking rings operating in southern Ohio. While victimized by her traffickers in Ohio, A.C. was subject to repeated instances of rape, physical abuse, verbal abuse, exploitation, psychological torment, kidnapping, and false imprisonment at the Defendants' hotels from approximately 2013-2015.

55.     In the summer of 2013, at 19 years old, A.C., a native of the Cincinnati, Ohio area, had run away

---

[57] Two in Columbia Netted in Nationwide Child Sex Trafficking Bust, WIS NEWS,(Nov,7,2019) https://www.wistv.com/story/22961765/two-in-columbia-netted-in-nationwide-child-sex-trafficking-bust/
[58] BPD Arrests Man for Human Trafficking,TURNTO23,(Nov.7,2019)https://www.turnto23.com/news/local-news/bpd-arrests-man-for-human-trafficking-in-central-bakersfield
[59] Melissa Boughton, *Nightmare of Sex Trafficking FBI: More Resources Needed to Target Trafficking Online*, THE POST AND COURIER (Nov.7,2019) https://www.postandcourier.com/news/special_reports/nightmare-of-sex-traffickingfbi-more-resources-needed-to-target-trafficking/article_1d44549d-37cb-5c3e-860e-4c318500646e.html
[60] Prostitution Investigation Lands Two in Jail, WGNS, (Nov.7,2019), https://www.wgnsradio.com/prostitution-investigation-lands-two-in-jail-cms-46351
[61] William Shepard, *Alleged Pimp for Runaway Teen Facing Sex* Trafficking Charge: MIAMI-DADE POLICE, NBC MIAMI,(Nov.7,2019), https://www.nbcmiami.com/news/local/Alleged-Pimp-for-Runaway-Teen-Facing-Sex-Trafficking-Charge-Miami-Dade-Police-289338451.html

from her family home after experiencing sexual abuse. Her first trafficker found her on the streets of downtown Cincinnati. He offered her pizza and a job as a secretary and she was lured in by her need and naiveté. Her trafficker drove her to an apartment complex and suddenly she was alone in a room with a stranger and being told to have sex with him for $40.

56. A.C. was required to have sex for payment with various buyers at the Defendants' hotels in response to advertisements for commercial sex that her trafficker posted on www.backpage.com without her consent.[62]

57. For months A.C. was forced to live with her trafficker and his wife at the Quality Inn® Hotel and Suites Central located at 4747 Montgomery Road, Cincinnati, OH 45212 in the Norwood area of Cincinnati. Her trafficker had gained control of her youngest child and used the toddler's welfare as leverage against A.C. Her trafficker denied her access to her child and kept his location a secret. A.C.'s trafficker promised that the child would be safe as long as A.C. did as he demanded.

58. Over the summer of 2013, A.C.'s trafficker forced her to service approximately five clients per day at the Quality Inn® Hotel and Suites Central, each of whom entered and exited the room and the hotel as an unannounced guest. Sometimes, A.C. served as many 15-20 clients in just one day.

59. A.C.'s trafficker paid cash for the room in which they lived for those summer months and it was a common practice at the Quality Inn® Hotel and Suites Central that the entire top floor was reserved for and inhabited by pimps and the women they were trafficking for commercial sex. These sex traffickers were allowed to stay at the hotel unreported as long as each pimp paid an extra fee to the front desk.

60. At the Quality Inn® Hotel and Suites Central A.C.'s room was frequently left with numerous used condoms scattered across various surfaces at the end of a day.

61. The Plaintiff observed some of the same hotels staff repeatedly over the extended period of time that she was trafficked for sex at the Quality Inn® Hotel and Suites Central.

---

[62] Backpage.com was the leading online marketplace for commercial sex, until it was seized by the federal authorities in April 2018. Backpage.com operated in 97 countries and 943 locations worldwide—and was last valued at more than a half-billion dollars. See STAFF OF PERMANENT SUBCOMMITTEE ON INVESTIGATIONS; 118TH CONG., REP. ON BACKPAGE.COM'S KNOWING FACILITATION OF ONLINE SEX TRAFFICKING (Comm. Print 2017).

62.     A.C. was routinely escorted by her traffickers in view of the front desk after her trafficker paid in cash for the rooms out of which the sex trafficking venture was housed.

63.      When A.C. did appear in the common areas of the hotel she appeared overtly malnourished and withdrawn. She was also consistently dressed in skimpy clothes and observed purchasing condoms at the nearby convenience store by hotel staff.

64.     A.C.'s trafficker was violent, verbally abusive, and repeatedly raped A.C. while they were at the Quality Inn® Hotel and Suites Central. The attacks on A.C. were constant and loud enough for the hotel patrons or staff to hear and her obvious and ongoing torture went ignored.

65.     During her time in the custody of this trafficker, A.C. was also forced to service clients for days at the Red Roof Inn® located at 2301 E Sharon Road and the Days Inn® located at 11775 Lebanon Road, in Sharonville, OH 45241.

66.     A.C.'s trafficker chose the hotels in Sharonville, Ohio because they had distinct reputations for commercial sex and illegal activity.

67.     A.C.'s trafficker would rent a room at these hotels for a number of days. He paid for the rooms in cash and would escort clients to the rooms to be serviced by A.C.  A.C. served around five clients per day, each of whom entered and exited the room and the hotel as an unannounced guest.

68.     The rooms used by A.C. and her trafficker at these hotels were again often left with numerous used condoms and underwear strewn about.

69.     When A.C. did appear in the common areas of the hotels she was noticeably skinny and withdrawn. She avoided eye contact and verbal interaction to a noticeable extent.

70.     In the summer of 2013, the police were called to the Red Roof Inn® in Sharonville due to noise complaints made by other guests as A.C. was being brutally beaten by her trafficker.  Several witnesses came forward and told the responding officers and hotel staff that A.C. had been beaten. However, A.C. and her trafficker were allowed to remain in the hotel.

71.     On another occasion in the summer of 2013, a public commotion erupted in the hallways of the Red Roof Inn® in Sharonville after A.C.'s trafficker tried to violently rob one of A.C.'s buyers.

72.     During her time in the custody of this trafficker, A.C. was also forced to service clients for days at the Quality Inn® and Suites Cincinnati Downtown located at 800 Eight Street W, Cincinnati, OH 45203.

73.     A.C.'s trafficker paid cash for the room at the Quality Inn® and Suites Cincinnati Downtown and would direct clients to the room to be serviced by A.C in view of hotel staff.  A.C. served approximately five clients per day, each of whom entered and exited both the room and hotel as an unannounced guest.

74.     At the Quality Inn® and Suites Cincinnati Downtown A.C.'s room was frequently left littered with numerous indicia of commercial sexual activity such as used condoms and discarded underwear.

75.     A.C.'s trafficker was violent and verbally abusive toward A.C. while they were at the Quality Inn® and Suites Cincinnati Downtown and his attacks on A.C. involved crashing, screaming, wailing, and violent yelling loud enough for the hotel patrons or staff to hear.

76.      When A.C. did appear in the common areas of the Quality Inn® and Suites Cincinnati Downtown she presented as malnourished, inappropriately dressed for the weather and circumstance, and oddly inhibited.

77.     Sometimes A.C. would also have to pay for the rooms at the Defendants' hotels.  In these instances A.C. interacted directly with the front desk staff, paid entirely in cash, remained as quiet as possible and avoided all eye contact.

78.     At each of the Defendants' hotels buyers of commercial sex would also regularly purchase rooms in which to be serviced by A.C. Buyers purchased rooms only to use them for a couple of hours.

79.     By the end of the summer of 2013, A.C. and her trafficker returned to the Quality Inn® Hotel and Suites Central located at 4747 Montgomery Road, Cincinnati, OH 45212. A.C. escaped her trafficker, by running barefoot out the back door of the hotel, through the parking lot to a nearby fire house. This was the fifth time A.C had run away, but it was the first time her trafficker did not come looking for her to bring her back.

80.     A.C. later found her son at a Cincinnati apartment complex after blindly knocking on the doors of over 30 apartments in search of him.

81.     On June 2, 2014, the Quality Inn® Hotel and Suites Central located at 4747 Montgomery Road,

Cincinnati, OH 45212 was ordered permanently closed by Judge Robert Ruehlman due to its repeated failure to address the rampant illegal activity happening on its premises.[63]

82.     Prior to, during, and following the incidents described herein, the Defendants had actual and/or constructive notice of drug dealing, prostitution, and/or general safety concerns at their hotels, including, but not limited to, video surveillance of their hotels, as well as oral or written complaints regarding said suspicious activity. The Defendants failed to take any actions to curtail these activities.

83.     Had the Defendants been paying attention to the activities being conducted at their hotels and on their properties, and the apparent red flags outlined above, it would have been impossible for them not to notice the victimization of A.C.

### E.  THE DEFENDANTS FACILITATED THE TRAFFICKING OF A.C.

84.     RRI, Wyndham, and Choice Hotels profited from the sex trafficking of A.C. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture. The Defendants leased rooms to A.C.'s traffickers, when they knew, or should have known, that the room was being used to imprison A.C., physically assault her, and subject her to repeated exploitation as she was forced into sexual servitude.

85.     RRI, Wyndham, and Choice Hotels knew, or should have known, that A.C. was being trafficked and that the Defendants were knowingly benefiting financially from said exploitation, because A.C.'s traffickers frequented the Defendants' hotels and always engaged in a similar obvious practice.

86.     RRI, Wyndham, and Choice Hotels knew, or should have known, that A.C. was being trafficked

---

[63] Judge Orders Norwood Hotel Permanently Closed ,WLWT, (Nov.7,2019), https://www.wlwt.com/article/judge-orders-norwood-hotel-permanently-closed/3544074 ; Kayla Woods, *Temporary Restraining Order Issued Closing Quality Inn Hotel in Norwod,* WLWT, (Nov.7,2019)https://www.wlwt.com/article/temporary-restraining-order-issued-closing-quality-inn-hotel-in-norwood/2954946; Kimball Perry, *Judge: Keep Norwood Hotel Closed,*CINCINNATI.COM,
(Nov.7,2019)https://www.cincinnati.com/story/news/2014/06/16/judge-keep-norwood-hotel-closed/10637137/; Mike Woeste, *Police Close Norwood Hotel for Drugs, Prostitution,*FOX19(Nov.7,2019).,https://www.fox19.com/story/25670671/police-close-quality-hotel-in-norwood-cite-drugs-prostitution; City Shuts Down Hotel After Allegations of Drugs and Prostitution, LOCAL 12(NOV.7,2019),https://www.youtube.com/watch?v=uLO16E-ZQ9A

because A.C. constantly entertained crowds of traffic to appease her traffickers' daily quotas, and her traffickers would check her in then escort her to the room; behavior that indicated they were using the Defendants' hotels for illegal sex trafficking ventures.

87.     Defendants RRI, Wyndham, and Choice Hotels participated in this illegal endeavor by knowingly or negligently providing lodging to A.C.'s traffickers in which to harbor A.C. while trafficking her.

88.     Defendants RRI, Wyndham, and Choice Hotels profited from the sex trafficking of A.C. and knowingly or negligently aided A.C.'s traffickers in their criminal ventures. The Defendants took no action as A.C. repeatedly visited the hotel, entertained hordes of different male guests, without any luggage, avoiding all eye contact, and exhibiting signs of malnourishment while inappropriately dressed for travel and being forcibly escorted by the same individuals.

89.     Defendants RRI, Wyndham, and Choice Hotels participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from A.C. in which to harbor A.C. in furtherance of her being trafficked for commercial sex.

90.     The Defendants all had the opportunity to stop A.C.'s traffickers and similar offenders from victimizing A.C. and others like her.   Instead, every Defendant failed to recognize or report A.C.'s trafficking and take reasonable measures to prevent or stop sex trafficking from occurring in their hotels.

91.     The Defendants all financially benefited from the sex trafficking of A.C., and other victims like her, and developed and maintained business models that attract and foster the commercial sex market for traffickers and buyers alike.

92.     Defendants RRI, Wyndham, and Choice Hotels enjoy the steady stream of income that sex traffickers bring to their budget level hotel brands, such as Red Roof Inn®, Days Inn®, and Quality Inn®.

93.     Defendants RRI, Wyndham, and Choice Hotels financially benefit from their ongoing reputation for privacy, discretion, and the facilitation of commercial sex.

94.     The Defendants failed to take any steps to alert the authorities, properly intervene in the situation, or take reasonable security steps to improve awareness of sex trafficking and/or prevent sexual

exploitation on their properties.

95. The Defendants maintained their deficiencies to maximize profits by:

    a.   Reducing the cost of training employees and managers of how to spot the signs of human trafficking and sexual exploitation and what steps to take;

    b.   Not refusing room rentals, or reporting guests to law enforcement, in order to maximize the number of rooms occupied and the corresponding rates, even if the rooms rented were to sex traffickers or buyers;

    c.   Lowering security costs by not having proper security measures, including, but not limited to, employing qualified security officers to actively combat human trafficking and sexual exploitation;

96. As a direct and proximate result of these egregious practices on the part of the Defendants, A.C. and victims of sex trafficking and exploitation like her, have been permanently injured and damaged physically, emotionally, psychologically, and financially.

## CAUSES OF ACTION

### A. COUNT ONE – 18 U.S.C §1595 ("TVPRA")

97. The Plaintiff A.C. incorporates each foregoing allegation.

98. A.C. is a victim of sex trafficking within the meaning of 18 U.S.C. §1591(a) and is therefore entitled to bring a civil action under 18 U.S.C. §1595.

99. The Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. §1595. Specifically, the Defendants had a statutory obligation not to benefit financially from a venture that they knew, or should have known, to engage in violations of 18 U.S.C. §1591 (a). At all relevant times, the Defendants breached this duty by participating in, and facilitating, the harboring and providing of A.C. for the purposes of commercial sex induced by force, fraud, or coercion, by their acts, omissions, and commissions.

100. The Defendants have financially benefited as a result of these acts, omissions, and/or commissions by keeping operating costs low, and maintaining the loyalty of the segment of their

33

customer base that seeks to participate in the sex trade.  Moreover, the Defendants directly benefitted from the trafficking of A.C. on each occasion they received payment for rooms that she was being kept in at the Defendants' hotels. The actions, omissions, and/or commissions alleged in this pleading were the but for and proximate cause of A.C.'s injuries and damages.

101.  A.C. has suffered substantial physical and psychological injuries as the result of being trafficked and sexually exploited at the Defendants' hotels and properties in violation of 18 U.S.C. §1591 (a).

## PRAYER FOR RELIEF

WHEREFORE the Plaintiff requests that the jury selected to hear this case render a verdict in her favor on all counts alleged, and against each and every named Defendant, separately and severally, and that it award damages to her in an amount which will adequately compensate her for the injuries and damages she sustained due to the Defendants' conduct outlined as follows:

    a.   All available compensatory damages for the described losses with respect to each cause of action;

    b.   past and future medical expenses, as well as the costs associated with past and future life care;

    c.   past and future lost wages and loss of earning capacity;

    d.    past and future emotional distress;

    e.   consequential and/or special damages;

    f.   all available noneconomic damages, including without limitation pain, suffering, and loss of enjoyment of life;

    g.   disgorgement of profits obtained through unjust enrichment;

    h.   restitution;

    i.   punitive damages with respect to each cause of action;

    j.   reasonable and recoverable attorneys' fees;

    k.   costs of this action; and

l.    pre-judgment and all other interest recoverable

Also, on the basis of the foregoing, the Plaintiff requests that a jury be selected to hear this case and render a verdict for the Plaintiff, and against the Defendants, and that it award damages to the Plaintiff in an amount which adequately reflects the enormity of the Defendants' wrongs, and which will effectively prevent other similarly caused acts.   Further, the Plaintiff requests that the Court enter judgment consistent with the jury's verdict, and prays for any other damages and equitable relief the Court or jury deems appropriate under the circumstances.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY**

Dated: February 4, 2020

**RESPECTFULLY SUBMITTED,**
**PLAINTIFF,**
**By Her Attorneys,**

 By: /S/ Steven C. Babin, Jr.
Steven C. Babin, Jr.
Babin Law, LLC
(614) 384-7035
1320 Dublin Road, #100
Columbus, Ohio 43215
steven.babin@babinlaws.com

# EXHIBIT A





# HOSPITALITY

## TOOLKIT

## Who We Are

The Blue Campaign is the unified voice for the U.S. Department of Homeland Security's (DHS) efforts to combat human trafficking. Working with law enforcement, government, and non-governmental and private organizations, the Blue Campaign strives to protect the basic right of freedom and bring those who exploit human lives to justice.

## What's Inside?

This **toolkit** offers tips and resources that can help you inform and educate your employees about human trafficking.

It includes **posters** of human trafficking warning signs for four groups of employee:

- Hotel and Motel Staff
- Housekeeping, Maintenance and Room Staff
- Concierge, Bellman, Front Desk, Security and Valet Staff
- Food and Beverage Staff

These posters can be displayed in common areas of your business where employees congregate (such as staff break, laundry and maintenance rooms).

www.dhs.gov/bluecampaign



# What is Human Trafficking?

Human trafficking is modern-day slavery and involves the use of force, fraud or coercion to obtain labor or commercial sex. Every year, millions of men, women and children are trafficked in countries around the world, including the United States.

There are different types of human trafficking:

- **Sex Trafficking**
  Victims of sex trafficking are manipulated or forced to engage in sex acts for someone else's commercial gain. Sex trafficking is not prostitution.

  Anyone under the age of 18 engaging in commercial sex is considered to be a victim of human trafficking. **No exceptions.**

- **Forced Labor**
  Victims of forced labor are compelled to work for little or no pay, often manufacturing or growing the products we use and consume every day.

- **Domestic Servitude**
  Victims of domestic servitude are forced to work in isolation and are hidden in plain sight as nannies, housekeepers or domestic help.

## Human trafficking and the hospitality industry

Traffickers often take advantage of the privacy and anonymity offered by the hospitality industry. They can operate discreetly because staff and guests may not know the signs of human trafficking.

You may have employees who are victims of forced labor. If a third party applied for a position on behalf of an individual or if employees are not receiving their own paychecks, these could be signs of human trafficking.

Hotels and motels are also major locations where traffickers force sex trafficking victims to provide commercial sex to paying customers. Victims may be forced to stay at a hotel or motel where customers come to them, or they are required to go to rooms rented out by the customers.

## What actions can I take at my business to help stop human trafficking?

You play a significant role in helping to stop this terrible crime by:

- Knowing the signs of human trafficking.
- Designing a plan of action to respond to reports of human trafficking in your business.
- Partnering with agencies that provide services to victims of human trafficking. In the case of lodging, consider offering vouchers to victims. Immediate housing for victims plays a vital role in beginning a victim's healing process.
- Providing employee training to help them understand and identify signs of human trafficking.
- Distributing and posting the fact sheets in this kit to your employees.

Information on additional resources, literature, materials, and training offered by the Blue Campaign can be found at www.dhs.gov/bluecampaign.





## SIGNS OF HUMAN TRAFFICKING
### For **Hotel** and **Motel** Staff

Hotel and motel employees are often in the best position to see potential signs of human trafficking, especially since your duties give you access to different areas of the properties. You may also have direct or indirect contact with both traffickers and victims.

### GENERAL INDICATORS

- Individuals show signs of fear, anxiety, tension, submission, and/or nervousness.
- Individuals show signs of physical abuse, restraint, and/or confinement.
- Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way.
- Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior.
- Individuals lack freedom of movement or are constantly monitored.
- Individuals avoid eye contact and interaction with others.

- Individuals have no control over or possession of money or ID.
- Individuals dress inappropriately for their age or have lower quality clothing compared to others in their party.
- Individuals have few or no personal items—such as no luggage or other bags.
- Individuals appear to be with a significantly older "boyfriend" or in the company of older males.
- A group of girls appears to be traveling with an older female or male.
- A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker.

*Each indicator alone may not necessarily mean a person is being trafficked.*

### WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING

Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.

Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.

Follow your corporate protocol, such as by notifying management and security.

Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.

To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign





For **Housekeeping, Maintenance,** and **Room Service** Staff

Housekeeping, maintenance, and room service staff typically have the most access to guest rooms where signs of human trafficking may be apparent. By being conscious of human trafficking indicators, you can help identify possible human trafficking activities and victims.

## GENERAL INDICATORS

- "Do Not Disturb" sign used constantly.
- Requests room or housekeeping services (additional towels, new linens, etc.), but denies hotel/motel staff entry into room.
- Refusal of cleaning services for multiple days.
- Excessive amounts of cash in a room.
- Smell of bodily fluids and musk.
- Presence of multiple computers, cell phones, pagers, credit card swipes, or other technology.
- The same person reserving multiple rooms.
- Individuals leaving room infrequently, not at all, or at odd hours.
- Children's items or clothing are present but no child registered with the room.

- Individuals loitering in hallways or appearing to monitor the area.
- Excessive amounts of alcohol or illegal drugs in rooms.
- Evidence of pornography.
- Minors left alone in room for long periods of time.
- Excessive number of people staying in a room.
- Extended stay with few or no personal possessions.
- Provocative clothing and shoes.
- Constant flow of men into a room at all hours.
- Excessive amounts of sex paraphernalia in rooms (condoms, lubricant, lotion, etc.).
- Rooms stocked with merchandise, luggage, mail packages, and purses/wallets with different names.

*Each indicator alone may not necessarily mean a person is being trafficked.*

## WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING

Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.

Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.

Follow your corporate protocol, such as by notifying management and security.

Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.

To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign





For **Concierge, Bellman, Front Desk, Security,** and **Valet** Staff

Concierge, bellman, front desk, security, and valet staff are typically the first to see guests when they enter the hotel. When checking in or requesting hotel amenities, a guest may exhibit behavior indicating human trafficking.

### GENERAL INDICATORS

- Patrons checking into room appear distressed or injured.
- The same person reserving multiple rooms.
- Few or no personal items when checking in.
- Room paid for with cash or pre-loaded credit card.
- Excessive use of hotel computers for adult oriented or sexually explicit websites.
- Patrons not forthcoming about full names, home address or vehicle information when registering.
- Minor taking on adult roles or behaving older than actual age (paying bills, requesting services).
- Patron appears with a minor that he or she did not come with originally.
- Rentals of pornography when children are staying in the room.
- Individuals dropped off at the hotel or visit repeatedly over a period of time.

- Individuals leaving room infrequently, not at all, or at odd hours.
- Minor with a patron late night or during school hours (and not on vacation).
- Individuals checking into room have no identification.
- Room is rented hourly, less than a day, or for long-term stay that does not appear normal.
- Patrons request information or access to adult services or sex industry.
- Room rented has fewer beds than patrons.
- Individuals selling items to or begging from patrons or staff.
- Individuals enter/exit through the side or rear entrances, instead of the lobby.
- Car in parking lot regularly parked backward, so the license plate is not visible.

*Each indicator alone may not necessarily mean a person is being trafficked.*

### WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING

- Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.

- Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.

- Follow your corporate protocol, such as by notifying management and security.

- Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.

- To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign





# SIGNS OF HUMAN TRAFFICKING
## For **Food** and **Beverage** Staff

Food and beverage staff may have access to a guest's room or see them using the hotel restaurant or bar. Be conscious of these signs indicating a guest may be a victim of human trafficking.

### GENERAL INDICATORS

- Patron entertaining a minor at the bar or restaurant that he/she did not come in with originally.
- Patron claims to be an adult although appearance suggests he/she is a minor.
- Individuals loitering and soliciting male patrons.
- Individuals waiting at a table or bar and picked up by a male (trafficker or customer).
- Individuals asking staff or patrons for food or money.
- Individuals taking cash or receipts left on tables.

*Each indicator alone may not necessarily mean a person is being trafficked.*

### WHAT TO DO IF YOU SUSPECT HUMAN TRAFFICKING

- Do not at any time attempt to confront a suspected trafficker directly or alert a victim to your suspicions.
- Call 9-1-1 for emergency situations—threats of violence, physical assault, emergency medical needs, etc.
- Follow your corporate protocol, such as by notifying management and security.
- Call 1-866-DHS-2-ICE (1-866-347-2423) to report suspicious criminal activity to federal law enforcement. Highly trained specialists take reports from both the public and law enforcement agencies. Submit a tip at www.ice.gov/tips.
- To get help from the National Human Trafficking Resource Center (NHTRC), call 1-888-373-7888 or text HELP or INFO to BeFree (233733).

www.dhs.gov/bluecampaign