IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| A.C., | : |
| | : Case No. 2:19-cv-4965 |
| **Plaintiff,** | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Chief Magistrate Judge Elizabeth P. Deavers |
| | : |
| **RED ROOF INNS, INC.**, *et al.*, | : |
| | : |
| **Defendants.** | : |

## OPINION & ORDER

This matter is before the Court on Defendant Choice Hotels International, Inc.'s ("Choice") and Defendant Wyndham Hotels & Resorts, Inc.'s ("Wyndham") Motions to Dismiss or, alternatively, Motions to Transfer Venue. (ECF Nos. 27, 29). For the following reasons, Defendants' Motions are hereby **DENIED.**

### I.  BACKGROUND

Plaintiff, A.C., alleges she was trafficked in the summer of 2013 at a Quality Inn Hotel and Suites Central in Cincinnati, Ohio and a Red Roof Inn and Days Inn in Sharonville, Ohio. (ECF No. 24 at ¶¶ 57, 65). Plaintiff now seeks to hold these hotels liable under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a).

Plaintiff alleges that these hotel Defendants knew that sex trafficking occurred frequently on their properties and failed to prevent it, and also that they knew or should have known of A.C.'s trafficking. Plaintiff points to behavior that she alleges hotel staff should have recognized as signs of her trafficking, including that she "repeatedly visited the hotel, entertained hordes of different male guests, without any luggage, avoiding all eye contact, and exhibiting signs of malnourishment while inappropriately dressed for travel and being forcibly escorted by the same

1

individuals." (ECF No. 24 at ¶ 88). Doe alleges that these hotels and their parent companies did not take adequate measures to prevent human trafficking and "demonstrated willful blindness to the rampant culture of sex trafficking" which facilitated the sex trafficking of A.C. (*Id.* at ¶¶ 52(a)(ix), 53(a)(ix)).

## II. STANDARD OF REVIEW

Defendants bring motions to dismiss Plaintiff's complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, move to dismiss Plaintiff's complaint for improper venue under Fed. R. Civ. P. 12(b)(3) or transfer venue under 28 U.S.C. § 1404.

### A. Venue

A complaint will be dismissed under Fed. R. Civ P. 12(b)(3) if venue is improper. Venue is proper under 28 U.S.C. § 1391(b) in: (1) any district in which the defendant resides, if all defendants are residents of the state; (2) a district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated;" or (3) if there is no other district where the action may be brought so long as the court has personal jurisdiction over the defendant. Even if venue is proper under § 1391(b), a court may exercise its discretion to grant a motion to transfer venue under 28 U.S.C. § 1404(a) "if the transfer would further the convenience of the parties and the witnesses and be in the interest of justice." *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 2:06-CV-0937, 2007 WL 2781669, at *2 (S.D. Ohio Sept. 24, 2007). On a motion to transfer, "the plaintiff's choice of a forum is entitled to considerable weight, and, consequently, the party moving for a change of venue must demonstrate that the interests served by 28 U.S.C. § 1404(a) clearly favor a change of venue." *Id.* at *3 (citing *Sun Oil Co. v. Lederle,* 199 F.2d 423 (6th Cir.1952)).

2

### B. Failure to State a Claim

The Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). The Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). If more than one inference may be drawn from an allegation, the Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). The Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. The Court is not required, however, to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Although liberal, Rule 12(b)(6) requires more than bare assertions of legal conclusions. *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citation omitted). Generally, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). It must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. LAW & ANALYSIS

### A. Venue

Defendant Choice argues Plaintiff's complaint should be dismissed for improper venue or, in the alternative, transferred to the Southern District of Ohio – Western Division. (ECF No. 27 at 16-20). Wyndham also asks the Court to exercise its discretion to transfer venue to the Western Division. (ECF No. 29 at 4-6).

Venue is determined by 28 U.S.C. § 1391(b), which provides that a civil action may be brought in federal district court in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). For the purposes of venue, an entity defendant resides "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2). Corporations "shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State." § 1391(d). Venue may be proper in multiple courts.

This Court finds that venue is proper in the Southern District – Eastern Division because Defendants' contacts would satisfy a personal jurisdiction analysis in this District. Choice argues

4

venue is improper in the Eastern Division because, as franchisors, it is not possible to determine with which division Defendants have the most significant contacts, and venue should thus be determined by the division where a substantial part of events or omissions giving rise to the claims occurred. (ECF No. 27 at 17). Choice cites S.D. Ohio Civ. R. 82.1(d) which provides:

> A corporation that is deemed to reside in this District pursuant to 28 U.S.C. § 1391(c) is further deemed to reside in that county in which its principal place of business within the District is located, or, if none, in that county with which it has the most significant contacts. If such a corporation's county of residence cannot be determined under this Rule, an action against such corporation shall be filed at a location of Court determined in accordance with the following Rules, in order of preference: (1) a county in which a substantial part of the events or omission giving rise to the claim occurred, or a substantial part of the property that is subject to the action is located; or (2) any location of Court.

The Court finds venue is proper in the Eastern Division because Plaintiff's allegations support a finding that Defendants had sufficient minimum contacts such that it would be subject to personal jurisdiction in this division under 28 U.S.C. § 1391(d) (establishing residency of corporate defendants is "in any judicial district in which such defendant is subject to the court's personal jurisdiction"). A.C. responds that venue is proper in the Eastern Division because Red Roof Inns, Inc. is headquartered there, and a fair amount of potential witnesses and discoverable information will likely be located there. (ECF No. 53 at 19-20).

Finding venue proper under § 1391, this Court turns to the argument made by both Choice and Wyndham that, even if venue is proper in the Eastern Division, this Court should exercise its discretion to transfer the case to the Western Division. (ECF No. 27 at 18-20; ECF No. 29 at 4-6). 28 U.S.C. § 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer a civil action to any other district or division where it might have been brought." In evaluating a motion to transfer venue, a court may consider factors such as access to proof, witnesses' ability to attend trial, enforceability of any

judgment rendered, and "prevent[ing] unnecessary waste of time, energy and money and to protect witnesses and the public interest against unnecessary inconvenience and expense." *MJR Intern.*, 2007 WL 2781669 at *2 (citing *Rowe v. Chrysler Corp.*, 520 F. Supp 15 (E.D. Mich. 1981)).

Balancing these factors, this Court declines to exercise its discretion to transfer the case to the Western Division. There is a presumption that "the plaintiff's choice of a forum is entitled to considerable weight." *MJR Intern.*, 2007 WL 2781669 at *3. Defendants have not demonstrated that the interests "clearly favor a change of venue," rather than being "slightly more advantageous to the parties or the witnesses." *Id.* This Court has recognized that, where several fora are available, some inconvenience to one or more parties may exist in either forum, and a change in venue is improper if transfer "serves merely to shift the inconvenience." *Id.* (citing *Raymond E. Danto Associates, Inc. v. Arthur D. Little, Inc.*, 316 F. Supp. 1350 (E.D. Mich. 1970)). "[A] generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to support a change of venue." *Id.* (citing *Hartford Accident & Indemnity Co. v. Dalgarno Transportation, Inc.*, 618 F. Supp. 1450 (S.D. Miss. 1985)). Because Defendants have alleged only this type of generalized inconvenience—that the alleged trafficking took place at hotel locations in the Western Division, and therefore, relevant documents and witnesses will be located there (ECF No. 27 at 19; ECF No. 29 at 6)—and not "a specific hardship," this Court **DENIES** Choice and Wyndham's Motions to Transfer Venue. *Id.* (citing *AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp 1335 (S.D. Ohio 1982)).

**B. Failure to State a Claim**

Defendants Choice and Wyndham move to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), arguing A.C. has failed to state a claim for civil liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA"). (ECF Nos. 27, 29).

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA in several cases factually similar to this one. *See M.A. v. Wyndham Hotels & Resorts, Inc.*, No. 2:19-cv-849, 2019 WL 4929297 (S.D. Ohio Oct. 7, 2019); *H.H. v. G6 Hospitality, LLC*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Doe S.W. v. Lorain-Elyria Motel, Inc.*, 2:19-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020).

Like the plaintiffs in the other related cases, A.C. brings claims under 18 U.S.C. § 1595,[1] which sets forth the standard for civil liability under the TVPRA. This Court held in *M.A.* and *H.H.* that § 1595(a) can be a standalone claim, and civil Defendants need not have committed the underlying criminal sex trafficking offense under § 1591.  *M.A.*, 2019 WL 4929297 at *2; *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPA "create[] civil liability both for those who face criminal liability for their profiteering and those who do not."); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 U.S. Dist. LEXIS 197819, at *6 (N.D. Ga. Sept. 9, 2014) (the 2008 amendments broadened the parties who could be sued for trafficking violations from

---

[1] 18 U.S.C. § 1595(a) provides: "An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees."

only the perpetrator to "anyone who 'knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter'")). This Court likewise finds that A.C.'s allegation that she is a victim of trafficking under § 1591 is enough sufficiently to plead that she is "a victim of this chapter" pursuant to § 1595(a) in order to survive a motion to dismiss.

The requirements for liability under § 1595(a) on a "beneficiary" theory can be stated as follows: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value," (2) from participating in a venture, (3) that the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

### 1. Knowing benefit

Defendants contend that they did not knowingly benefit financially from the sex trafficking venture. Wyndham argues any benefits from an "indirect franchising relationship" are not sufficient to support the claim that it knowingly benefited from the venture. (ECF No. 29 at 10). Choice likewise suggests that the "simple transfer of funds under a preexisting franchise agreement are not those contemplated under the statute." (ECF No. 27 at 9). Its argument is grounded in speculative concerns about opening the floodgates for other kinds of corporate liability, but is untethered to the statutory language itself. Section 1595(a) does not impose an actual knowledge requirement. The first element merely requires that Defendant knowingly receive a financial benefit, not that the perpetrator have actual knowledge of the sex trafficking venture. As this Court found in *M.A.* and *H.H.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 2019 WL 4929297 at *3; *H.H.*, 2019 WL 6682152 at *2. *See also Gilbert v. United States Olympic Committee*, No. 18-cv-00981-CMA-MEH, 2019 WL 4727636, at *16 (D.

Colo. Sept. 27, 2019) (finding the forced labor provision of § 1589(b) does not "require[] the party to benefit from the [forced] labor or services for liability to attach").

*2. Knew or should have known the venture was engaged in trafficking*

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. Defendant Wyndham argues Plaintiff fails to meet this element because she has not alleged Wyndham was specifically "aware of or interacted with Plaintiff or her alleged trafficker" or that it "took deliberate steps to avoid confirming that Plaintiff was being trafficked." (ECF No. 29 at 12). Choice makes similar arguments that sound of actual knowledge, arguing "Plaintiff has failed to allege that Choice ever dealt with the Plaintiff herself." (ECF No. 27 at 11). However, as this Court held in *M.A.* and *H.H.*, the plain text of § 1595(a) makes clear that the standard under this section is a negligence standard of constructive knowledge, not actual knowledge. *M.A.*, 2019 WL 4929297 at *7; *H.H.*, 2019 WL 6682152 at *3.

Plaintiff's allegations against Defendants include the following:

- "For months A.C. was forced to live with her trafficker and his wife at the Quality Inn® Hotel and Suites Central located at 4747 Montgomery Road, Cincinnati, OH 45212 in the Norwood area of Cincinnati." (ECF No. 24 at ¶ 57).

- "Over the summer of 2013, A.C.'s trafficker forced her to service approximately five clients per day at the Quality Inn® Hotel and Suites Central, each of whom entered and exited the room and the hotel as an unannounced guest. Sometimes, A.C. served as many 15-20 clients in just one day." (ECF No. 24 at ¶ 58).

- "A.C.'s trafficker paid cash for the room in which they lived for those summer months and it was a common practice at the Quality Inn® Hotel and Suites Central that the entire

top floor was reserved for and inhabited by pimps and the women they were trafficking for commercial sex. These sex traffickers were allowed to stay at the hotel unreported as long as each pimp paid an extra fee to the front desk." (ECF No. 24 at ¶ 59).

- Plaintiff "observed some of the same hotels staff repeatedly," "was routinely escorted by her traffickers in view of the front desk after her trafficker paid in cash for the rooms," and "appeared overtly malnourished and withdrawn" (ECF No. 24 at ¶¶ 61-63).

- "A.C. was also forced to service clients for days at the Red Roof Inn® located at 2301 E Sharon Road and the Days Inn® located at 11775 Lebanon Road, in Sharonville, OH 45241." (ECF No. 24 at ¶ 65).

- "In the summer of 2013, the police were called to the Red Roof Inn® in Sharonville due to noise complaints made by other guests as A.C. was being brutally beaten by her trafficker. Several witnesses came forward and told the responding officers and hotel staff that A.C. had been beaten. However, A.C. and her trafficker were allowed to remain in the hotel." (ECF No. 24 at ¶ 70).

- Defendants "profited from the sex trafficking of A.C. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture." (ECF No. 24 at ¶ 84).

- Defendants knowingly or negligently facilitated A.C.'s sex trafficking by ignoring the fact that "A.C. repeatedly visited the hotel, entertained hordes of different male guests, without any luggage, avoiding all eye contact, and exhibiting signs of malnourishment while inappropriately dressed for travel and being forcibly escorted by the same individuals." (ECF No. 24 at ¶¶ 87-88).

This Court must decide whether these allegations are sufficient to state a claim that Defendants knew or should have known the venture was engaged in sex trafficking. This Court

10

finds Plaintiff's allegations are sufficient to allege constructive knowledge. As this Court previously noted, "[s]everal courts have found failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence." *M.A.*, 2019 WL 4929297 at *6 (citing *Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint stated sufficient allegations under § 1983, based on willful blindness, where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape"); *Trollinger v. Tyson Foods, Inc.*, 2007 WL 1574275, at *12 (E.D. Tenn. May 29, 2007) (finding that a "willful blindness policy" could be sufficient to show a RICO violation)). Here, A.C. has alleged that Defendants were on notice about the prevalence of sex trafficking generally at their hotels and failed to take adequate steps to train staff in order to prevent its occurrence. She also alleges facts specific to her own sex trafficking, including a number of signs she alleges should have alerted staff to her situation. These allegations are sufficient to meet the negligence standard in § 1595 for purposes of surviving a 12(b)(6) Motion to Dismiss.

### 3. *Participation in a venture*

The last element requires the Court to decide whether Plaintiff alleged sufficient facts that show Defendants' conduct constituted "participation in venture" under § 1595(a). A.C.'s trafficker had a sex trafficking venture. The question is whether the Defendant hotels were participating in that venture through "leas[ing] rooms to A.C.'s traffickers, when they knew, or should have known, that the room was being used to imprison A.C., physically assault her, and subject her to repeated exploitation." (ECF No. 24 at ¶ 84).

Defendant Choice argues Plaintiff has not alleged any other act in furtherance of the sex trafficking, and thus her claims are insufficient to show participation. (ECF No. 27 at 8). Wyndham likewise argues that it cannot be liable under the TVPRA because it did not share a common purpose with the alleged trafficker. (ECF No. 29 at 9-10). Plaintiff argues that Defendants inappropriately rely on § 1591 and criminal cases like *United States v. Afyare*, 632 F. App'x 272 (6th Cir. 2016), which differ from civil liability under § 1595. As this Court explained in *M.A* and *H.H.*, Plaintiff's interpretation best comports with the plain text of § 1595. Section 1595 includes a constructive knowledge requirement, and "applying the definition of 'participation in a venture' provided for in § 1591(e) to the requirements under § 1595 would void the 'known or should have known' language of § 1595." *M.A.*, 2019 WL 4929297 at *7; *H.H.*, 2019 WL 6682152 at *4. *See also Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 288–89 (D. Conn. 2013) (finding liability under § 1595 can attach when an individual participates in a venture that is not specifically a sex trafficking venture and participation is not direct participation in the sex trafficking).

This Court therefore found that "participation" under § 1595 does not require actual knowledge of participation in the sex trafficking itself.  The Court must then examine whether there was "participation in a venture" here.  Plaintiff's theory here is that the defendants "enabled, harbored, held, facilitated, and financially benefited from a sex trafficking venture in which A.C. was trafficked for the purpose of commercial sex." (ECF No. 24 at ¶ 8).  A.C. alleges that the Defendants "participated in this illegal endeavor by knowingly or negligently providing lodging to those who purchased sex from A.C. in which to harbor A.C. in furtherance of her being trafficked for commercial sex."  (*Id.* at ¶ 89). In the absence of a direct association, Plaintiff must allege at least a showing of a continuous business relationship between the

trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement. *See, e.g.*, *In re Polyurethane Foam Antitrust Litigation*, 152 F. Supp. 3d 968, 983 (N.D. Ohio 2015) (citing *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 126 (3d Cir. 1999) (acknowledging that price-fixing can be shown be tacit agreement); *McGuire v. Lewis*, No. 1:12-cv-986, 2014 WL 1276168, at *6 (finding allegations sufficient "to identify the individuals alleged to have conspired, to plausibly suggest some joint action among the individuals, and to explain how the purported joint action led to the alleged deprivation of [plaintiff's] rights. In particular, they plausibly show a tacit agreement . . . ."). This requirement also comports with a principle implied in *Ricchio*. There, the First Circuit found sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings. *Ricchio v. McLean*, 853 F.3d 553, 555 (1st Cir. 2017).

Plaintiff argues that Defendants "profited from the sex trafficking of A.C. and knowingly or negligently aided and engaged with her trafficker in his sex trafficking venture." (ECF No. 24 at ¶ 84). Defendants need not have actual knowledge of the sex trafficking in order to have participated in the sex trafficking venture for civil liability under the TVPRA, otherwise the "should have known" language in § 1595(a) would be meaningless. This Court finds Plaintiff has alleged sufficient facts to show Defendants "participated in a venture" under § 1595 by alleging that Defendants rented rooms to people it knew or should have known were engaged in sex trafficking. These acts and omissions by Defendants, A.C. alleges, facilitated the sex trafficking venture.

### 4. Vicarious Liability

Defendants Choice and Wyndham contend they do not own, operate, manage, or control the hotels at which Plaintiff was allegedly trafficked. (ECF No. 27 at 8; ECF No. 29 at 9). They

claim they have no power over the operations at the individual franchise locations and therefore cannot be held vicariously liable for any alleged negligence of a franchisee. (ECF No. 27 at 13; ECF No. 29 at 14).

As this Court observed in *M.A.*, "[i]t is a long-standing principle of law in Ohio that '[a] principal is chargeable with the knowledge of, or notice to, his agent that is received by the agent in the due course of the agent's employment and is related to the matters within the agent's authority.'" 2019 WL 4929297 at *9 (quoting *Liggett v. Chesapeake Energy Corp.*, 591 F. App'x 305, 309 (6th Cir. 2014)). In determining whether there is an agency relationship, the question is how much the agent "retained control, or the right to control, the mode and manner of doing the work contracted for." *Beddia v. Goodin*, 957 F.2d 254, 257 (6th Cir. 1992) (quoting *Councell v. Douglas*, 163 Ohio St. 292, 126 N.E.2d 597, 599 (1955)). A.C. alleges Wyndham and Choice controlled the business operations, training, management, supervision, administration, and procedures of the franchise locations where she was trafficked. (ECF No. 24 at ¶¶ 52(a)(vi), 53(a)(vi)). She alleges an agency relationship was created between the individual hotels and the franchisor Defendants through profit sharing, standardized training methods, safety protocols, and reporting procedures. (*Id.*). These allegations are sufficient to meet the pleading standards of Rule 8.

Similar to the agency relationship inquiry, whether two employers are a joint employer often turns on how much control one exercises over the other. See, e.g., *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (quoting *Metropolitan Detroit Bricklayers Dist. Council v. J.E. Hoetger & Co.*, 672 F.2d 580, 584 (6th Cir. 1982)) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of

labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 F. App'x 587, 594 (6th Cir. 2009) (quoting *United States EEOC v. Custom Companies,* Case Nos. 02 C 3768, 03 C 2293, 2007 WL 734395, at *5–8, 2007 U.S. Dist. LEXIS 16691, at *15–24 (N.D.Ill. March 8, 2007)) (adopting the test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations."). The Sixth Circuit has recognized the employer control theory and the agency theory are "essentially the same." *Satterfield v. Tennessee*, 295 F.3d 611, 618 n.6 (6th Cir. 2002).  Although A.C. has not alleged additional facts specific to the joint employer allegation, her facts supporting an agency relationship could plausibly show some element of control to establish joint employer status.  Therefore, her allegations meet the pleading standard for the same reasons as above.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss are hereby **DENIED.**


**IT IS SO ORDERED.**

_____
**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE:  June 16, 2020**